IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GDM ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-1069-CV-W-SRB |
| | ) | |
| ASTRAL HEALTH & BEAUTY, INC., et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER**

Before the Court is Defendants' Motion for Partial Summary Judgment. (Doc. #79). For the following reasons the motion is GRANTED IN PART and DENIED IN PART.

I. **Legal Standard**

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While a plaintiff opposing summary judgment "may not simply point to allegations in the complaint," *Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir. 2015) (internal quotation marks and citation omitted), the "standard for avoiding summary judgment" is "relatively lenient." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 479–80 (2013) (citing *Anderson*, 477 U.S. at 248). The purpose of summary judgment "is not to cut litigants off from their right of trial by jury if they really have issues to try." *Hughes v. Am.*

1

*Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)).

Defendants filed their Motion for Partial Summary Judgment on May 13, 2019. Discovery, however, remains open and will close on December 1, 2019. The court recognizes that in the case of motions for summary judgment filed prior to the completion of discovery, it must be sensitive to the possibility and likelihood of continued factual development that will occur during the remaining discovery period. *See* Fed. R. Civ. P. 56(d).

## II. Background

Considering the parties' statements of fact and supporting evidence in the light most favorable to Plaintiff as the non-moving party, the Court finds the relevant facts to be as follows:

Plaintiff and Defendants are both involved in the cosmetic industry. Plaintiff owns the registered trademark for "PURE COSMETICS." Plaintiff filed the application for the trademark on September 19, 2012, with the United States Patent & Trademark Office ("PTO"). The application was a use-based application under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a). In its application, Plaintiff applied for registration of the trademark in International Classes 3, 4, 16, and 21. For each International Class, Plaintiff asserted that the mark was "first use[d] anywhere . . . at least as early as 06/01/2012, and first use[d] in commerce at least as early as 07/01/2012." (Doc. #81-17, p. 100). Ultimately, Plaintiff deleted International Classes 4 and 16 from the application, and the trademark was registered for the product categories Plaintiff selected within International Class 3, Cosmetics and Cleaning Preparations; and International Class 21, Household Utensils.[1]

---

[1] Plaintiff selected over one hundred product categories within International Class 3 and ten product categories within International Class 21.

Plaintiff alleges Defendants are infringing on Plaintiff's trademark by utilizing the confusingly similar brand name, "Pür Cosmetics." The claims that remain active in Plaintiff's Second Amended Complaint are for trademark infringement under 15 U.S.C. § 1114(1), Count 1; federal unfair competition/false designation of origin under 15 U.S.C. § 1125(a), Count 4; and state common law unfair competition, Count 5. Defendants argue they cannot have infringed on Plaintiff's trademark because Plaintiff's trademark is invalid and must be cancelled. Defendants bring two counterclaims—declaration of non-infringement, Counterclaim 1; and cancellation of U.S. trademark for PURE COSMETICS, Counterclaim 2. Defendants now move for summary judgment in their favor on their Counterclaim 2 and dismissing Plaintiff's Count 1, arguing they could not have infringed on Plaintiff's trademark and that Plaintiff's trademark should be cancelled. Defendants argue Plaintiff's trademark registration was procured by fraud and the trademark is void *ab initio* as a result of Plaintiff's failure to use the trademark in commerce prior to the filing date of the application. Defendants also move for summary judgment on Plaintiff's references to actual damages and Plaintiff's jury trial demand, arguing that Plaintiff seeks a disgorgement of profits, not actual damages, which is a request for equitable relief to be decided by the Court.

### III. Discussion

#### A. Cancellation of Trademark

##### 1. Fraud

Defendants argue Plaintiff's trademark should be cancelled because the trademark registration was procured by fraud. Defendants argue that Plaintiff "obtained the PURE COSMETICS registration by repeatedly making false statements to the PTO." (Doc. #80, p. 29). Defendants argue that Plaintiff falsely "claimed under penalty of perjury to be using PURE

3

COSMETICS as a trademark in connection with more than 165 products as of September 19, 2012." (Doc. #80, p. 29). Defendants argue further that Plaintiff "was not using PURE COSMETICS in connection with even one of the products claimed as of the date of the application." (Doc. #80, p. 29). Defendants argue that Plaintiff "made the false statements in an intentional effort to secure the broadest possible protection afforded by the federal system of trademark registration while paying the minimum in filing fees and without incurring attorney's fees." (Doc. #80, p. 29).

Plaintiff argues it did not intend to defraud the PTO. Plaintiff contends that while it "had sold some cosmetics products under the PURE COSMETICS brand name prior to filing the PURE COSMETICS [trademark] application," Plaintiff "mistakenly filed [the trademark] application over product areas where [Plaintiff] had not yet sold products." (Doc. #87, pp. 8, 78). Plaintiff attributes this mistake to the nature of the company at the time, which Plaintiff describes as a struggling "small cosmetics manufacturing company in the middle of a rebranding effort." (Doc. #87, p. 78). Plaintiff argues its founder and manager, Miranda Coggins, "was juggling many responsibilities to get her PURE COSMETICS line manufactured, packaged, sold, and distributed, while being able to compete in the extremely competitive cosmetics market." (Doc. #87, p. 78). Plaintiff argues its trademark registration should not be cancelled; rather, "those product lines [in which Plaintiff has not yet sold products] should simply be eliminated from the trademark registration." (Doc. #87, p. 8).

To apply for trademark registration under Section 1(a) of the Lanham Act, the trademark must be "used in commerce." 15 U.S.C. § 1051(a)(1).

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

4

**(1)** on goods when—

> **(A)** it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> **(B)** the goods are sold or transported in commerce[.]

15 U.S.C. § 1127. The trademark must be "in use in commerce as of the application date." 37 C.F.R. § 2.34(a)(1)(i).

"A third party may petition to cancel a registered trademark on the ground that the 'registration was obtained fraudulently.'" *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting 15 U.S.C. § 1064(3)). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1148 (8th Cir. 2011) (quoting *In re Bose*, 580 F.3d at 1243) (internal quotation marks omitted). "[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." *In re Bose*, 580 F.3d at 1245. "Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis." *Id.* "A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof." *Id.* at 1243 (internal citation omitted). "Indeed, the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence." *Id.* (internal citation omitted). "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id.* (internal citation and quotation marks omitted). "The factual question of intent [to deceive the PTO] is particularly unsuited to disposition on summary judgment." *Asian*

*and Western Classics B.V. v. Selkow*, 92 U.S.P.Q.2d 1478, 2009 WL 3678263, at *3 (T.T.A.B. 2009) (internal citation omitted).

The Court finds that even if Plaintiff made false, material representations to the PTO, there remains a genuine dispute as to whether Plaintiff made such representations with the required intent to deceive the PTO. *See Enbridge, Inc. v. Excelerate Energy Ltd. P'ship*, 92 U.S.P.Q.2d 1537, 1541, 2009 WL 3541047 (T.T.A.B. 2009) ("At a minimum, whether [Plaintiff] knowingly made this representation of use with the intent to deceive the USPTO remains a genuine issue of fact to be determined at trial."). Plaintiff does not dispute that the trademark was not being used in commerce in connection with some of the product categories it selected on its trademark application. Plaintiff claims, however, that in signing the trademark application, it did not have the requisite intent to deceive the PTO. Defendants argue the Court can infer fraudulent intent from Plaintiff's admissions regarding the lack of use of the trademark, Plaintiff's submission of specimens of products to the PTO that were not yet being sold at the time of the application filing, Plaintiff's lack of effort to correct its application, and Plaintiff's knowledge of the trademark application process based on its prior experience with filing trademark applications. Defendants urge the Court to consider "the large number of [goods Plaintiff] falsely claimed to be [selling] in commerce using the mark," citing *Nationstar Mortg. LLC v. Mujahid Ahmad*, 112 U.S.P.Q. 2d 1361, 1374 (T.T.A.B. 2014). (Doc. #80, p. 36).

While the Court recognizes that Plaintiff's act of selecting an expansive list of product categories on her trademark application could cut against Plaintiff's credibility, the Court also recognizes that, alternatively, it could demonstrate that Plaintiff made a true uninformed decision in the application process. The Court also finds Plaintiff's argument as to why the evidence shows it did not intend to deceive the PTO could be found credible and convincing to a

reasonable juror.  Plaintiff maintains that Coggins thought "she was 'doing the right thing' in filing a use-based application for the cosmetic goods identified in the PURE COSMETICS application, several categories of which were in the process of being manufactured, labeled, marketed, and ready for retail and at least a few of which had already been sold in commerce." (Doc. #87, p. 82).  Plaintiff has also produced documentation that, viewed in the light most favorable to Plaintiff, demonstrates Plaintiff sold some products using the trademark prior to the application filing date.[2]  Plaintiff stresses that Coggins did not consult a lawyer prior to filing the trademark application and that she was not educated about what constitutes use for trademark law purposes.  Plaintiff argues that its large-scale effort to start selling products under the trademark at and around the time it filed the trademark application, and subsequent success in selling "a lot more product" in connection with the trademark "by the end of 2012" demonstrate

---

[2] In a six-page reply to Plaintiff's response to Defendants' eleventh statement of fact, Defendants argue the Court cannot consider and must exclude Plaintiff's Exhibits 1, 2, 4, and 5 because the information supplied by the exhibits is "wholly inconsistent with the information [Plaintiff] previously provided [Defendants], and relies, for the 'foundation,' on self-serving and unreliable declarations of Ms. Coggins and Mr. Burns [controller for Plaintiff]." (Doc. #93, p. 12).  Plaintiff's Exhibit 4 "is a printout summarizing the sales of specific products which were marked with PURE COSMETICS at the time of sale, and where the sales occurred before September 19, 2012." (Doc. #87-3, p. 2).  Exhibit 2 is a declaration of Burns that explains how the sales summary of specific products was generated.  Burns also declares his understanding that Plaintiff "will make the full report [Burns] ran available to [Defendants] to supplement its discovery requests." (Doc. #87-3, p. 3).  Exhibit 1 is a declaration of Coggins in which Coggins explains that prior to the filing of the instant motion for summary judgment, Coggins "had a difficult time obtaining specific dates of use of the PURE COSMETICS mark with specific products" because as a younger company, Plaintiff "was not great about record keeping." (Doc. #87-2, p. 3).  Coggins goes on to explain that she "very recently discovered that some product sales dates may exist within data in our original accounting software system, which we no longer use." (Doc. #87-2, p. 3).  Exhibit 5 is a summary of "approximate dates" of when certain Dropbox files were created that house some of Plaintiff's "historical marketing documents," which Plaintiff used to estimate dates of sales of products "based on [Plaintiff's] knowledge that we typically would offer PURE COSMETICS for sale about three to four months after we had developed the product." (Doc. #87-2, ¶ 15). Defendants argue the enumerated exhibits are inadmissible under Federal Rule of Civil Procedure 37 because Plaintiff "failed to disclose the evidence during discovery," and because Plaintiff cannot demonstrate the failure was "substantially justified or harmless." (Doc. #93, pp. 7–8).  The Court finds Plaintiff's failure to disclose the evidence set forth in the enumerated exhibits is substantially justified based on Coggin's reasoning set forth above. Further, discovery does not close in this case until December 1, 2019, which gives Plaintiff a substantial amount of time to disclose to Defendants the full report referenced by Burns.  The Court also finds that Plaintiff has not "merely point[ed]to unsupported self-serving [affidavits]," in support of its argument that it sold some products in commerce prior to the trademark application date.  (Doc. #93, p. 12) (citing *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (internal citation omitted)).  Rather, Plaintiff "substantiate[d] [its] allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor" by supplying Exhibits 4 and 5 as newly-discovered evidence in support.  *Conolly*, 457 F.3d at 876 (internal citation omitted).

Plaintiff had no intent to deceive the PTO. (Doc. #87-2, p. 6). The Court finds Plaintiff has presented sufficient evidence to establish a genuine dispute of material fact regarding Plaintiff's intent. Accordingly, because the evidence "viewed in the light most favorable to [Plaintiff], is such that a reasonable jury could return a verdict for [Plaintiff]," the motion for summary judgment on Counterclaim 2 based on Defendants' argument that Plaintiff's trademark was fraudulently procured must be denied.[3] *See Stuart C. Irby Co.*, 796 F.3d at 922.

### 2. Void *Ab Initio*

Defendants argue alternatively that Plaintiff's trademark registration is not valid as a matter of law because Plaintiff did not use the trademark in interstate commerce on any of the products Plaintiff selected in its application on or before September 29, 2012, the date Plaintiff filed the trademark application. Defendants argue that "[a]n 'in use' registration that issued in spite of the fact that no use actually occurred as of the filing date is void *ab initio* and subject to cancellation." (Doc. #80, p. 29). Plaintiff argues that its trademark cannot be void *ab initio* because it did use the trademark in commerce on some of the products it claimed to be in use prior to the trademark application filing date. Plaintiff argues "the only reasonable remedy would be to narrow some of the goods from the trademark to the extent they are not used— which [Plaintiff] has offered to do." (Doc. #87, p. 86).

A use-based trademark application is void *ab initio*[4] when "the applicant has not used the applied-for mark on any of the goods or services identified in the application prior to the filing of the application." *Grand Canyon West Ranch, LLC v. Hualapai Tribe*, 78 U.S.P.Q. 2d 1696,

---

[3] While the Court finds summary judgment is inappropriate at this time, the Court expects Plaintiff to clarify by discovery responses and/or amendment to its pleadings the precise product categories Plaintiff concedes should be "eliminated from the trademark registration" based on a lack of use in commerce prior to the trademark application filing date. (Doc. #87, p. 8). The Court also welcomes further motion practice following Plaintiff's identification of product categories that should be removed from the trademark registration.
[4] "Void ab initio" means "[n]ull from the beginning." *Black's Law Dictionary* 1064 (8th ed. 2004).

2006 WL 802407, at *1 (T.T.A.B. 2006). However, in the absence of fraud, "as long as the mark was used on some of the identified goods or services as of the filing of the application, the application is not void in its entirety." *Grand Canyon*, 2006 WL 802407, at *1. "One way to cure the defect would be to delete from the description those goods or services on which the mark was not used." 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31:73 (5th ed. 2019). As the Court discussed in its analysis of the fraud argument, Plaintiff has presented some evidence that, viewed in the light most favorable to Plaintiff, demonstrates that the trademark was used on some of Plaintiff's goods prior to the filing of the trademark application. Accordingly, cancelling Plaintiff's registration as void *ab initio* would be improper on summary judgment. *See Grand Canyon*, 2006 WL 802407, at *1. The Court finds a genuine issue of material fact exists as to whether Defendants are entitled to judgment on their Counterclaim 2 based on Defendants' argument that the trademark registration is void *ab initio*.[5]

### B. Damages

Defendants argue that because Plaintiff only seeks relief in the form of disgorgement of profits, which is equitable in nature, Plaintiff's references throughout the Second Amended Complaint to "actual damages" and Plaintiff's jury demand must be stricken. Plaintiff argues that seeking an infringer's profits is considered analogous to seeking actual damages, which makes it a legal remedy fit for determination by jury.

"There is no doubt that there is a right to a jury trial in a trademark case when damages are sought." *O'Reilly Auto. Stores, Inc. v. Bearing Technologies, Ltd.*, 2018 WL 4862366, at *1

---

[5] While the Court finds summary judgment is inappropriate at this time, the Court expects Plaintiff to clarify by discovery responses and/or amendment to its pleadings the precise product categories Plaintiff concedes should be "eliminated from the trademark registration" based on a lack of use in commerce prior to the trademark application filing date. (Doc. #87, p. 8). The Court also welcomes further motion practice following Plaintiff's identification of product categories that should be removed from the trademark registration.

9

(W.D. Mo. 2018) (citing *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1304 (2015); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477, 479-80 (1962)). "Most courts have relied on *Dairy Queen* to conclude that there is a right to a jury trial in a trademark action when legal damages are sought but not when the only relief sought is equitable in nature, even if the equitable relief involves the payment of money." *Id.* (citing 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32:124 (5th ed. 2018)); *see also Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991) (upholding the denial of a jury trial in a trademark infringement case because the plaintiff's "complaint requested only equitable relief; an injunction and disgorgement of profits"); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 410 (2015) (holding that a claim seeking disgorgement of profits is an equitable remedy for which there is no right to a jury trial); *Hard Candy, Inc. v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1359–60 (11th Cir. 2019); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 133 (2d Cir. 2014). District Courts within the Eighth Circuit agree. *See Arctic Cat, Inc. v. Sabertooth Motor Grp., LLC*, 2016 WL 4212253, at *5–6 (D. Minn. 2016); *Lovely Skin, Inc. v. Ishtar Skin Care Prod., LLC*, 2012 WL 379930, at *9 (D. Neb. 2012); *Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, LP*, 2002 WL 1763999, at *10 (D. Minn. 2002).

Plaintiff does not dispute that it only "seeks an accounting and disgorgement of [Defendants'] profits" pursuant to 15 U.S.C. § 1117(a).[6] (Doc. #87, p. 90). Plaintiff admits that it is "not seeking any recovery for actual damages[.]." (Doc. #87, ¶ 113). Plaintiff's attempt to characterize its request for relief as a "rough proxy measure of [Defendants'] actual damages,"

---

[6] Plaintiff also seeks attorneys' fees and a trebling of any award of disgorgement of profits and attorneys' fees. Plaintiff acknowledges that awarding attorneys' fees and trebling awards occurs at the discretion of the Court and not the jury under §1117(a). (Doc. #87, p. 67).

and thus as a "legal remedy" is unconvincing and finds no support in the law.  Plaintiff cites *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 474 (8th Cir. 2011) to support its argument that an accounting and disgorgement of profits constitute legal relief.  Plaintiff mischaracterizes the Court's holding in *Masters*; the instant issue was not before the *Masters* Court.  The weight of authority cited by the Court establishes that a request for an accounting and disgorgement of Defendants' profits in a trademark case constitutes equitable relief.  Plaintiff is not entitled to a jury trial.  Accordingly, summary judgment on this ground is granted, and the Court orders Plaintiff's references to actual damages and Plaintiff's demand for a jury trial stricken from the Second Amended Complaint.

## IV. Conclusion

Defendants' Motion for Partial Summary Judgment (Doc. #79) is GRANTED IN PART and DENIED IN PART.  Defendants' motion for summary judgment on their Counterclaim 2 and dismissing Plaintiff's Count 1 is DENIED.  Defendants' motion to strike Plaintiff's references to actual damages and Plaintiff's demand for a jury trial is GRANTED.  This Order will be filed under seal for seven days.  The parties have until and including July 17, 2019, to file any objection to the seal being lifted.  On July 18, 2019, this Order shall be made public.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  July 10, 2019